[Civ. No. 13006. First Dist., Div. Two. June 25, 1946.]

Estate of BERNICE B. FRASER, Deceased. RICHARD H. BEMIS, as Administrator, etc., Appellant, v. HARRIET COOMBS, as Executrix, etc., Respondent.

William Steinberg for Appellant.

Reginald E. Foster, John M. Thompson and Chellis Carpenter for Respondent.

NOURSE, P. J.—The contestant of a will appeals from a judgment of nonsuit and from an order denying his motion to set aside the decree of final distribution.

Bernice B. Fraser, a 63-year-old childless widow, died on March 27, 1944, at Carmel, leaving an estate consisting of real and personal property valued at $32,337.27. Her

last will and testament, dated January 4, 1944, was filed for probate in the Superior Court of Monterey County on March 30, 1944, by Harriet Coombs, executrix and principal beneficiary. Under the will Mrs. Coombs received all of the estate except $2,500 to Mrs. Jessie Joan Bever and $250 to Samuel R. Bemis, brother of the testatrix and contestant herein. The instrument was admitted to probate on April 10, 1944, and the decree of final distribution was granted on February 28, 1945. On October 2, 1944, Samuel R. Bemis instituted the present action contesting the will principally upon the ground that it was made and executed as a result of the undue influence of Mrs. Coombs. The contestant died prior to the trial and his son, Richard H. Bemis, was substituted as special administrator of his estate. The evidence presented to the trial court by the contestant, which must be viewed in the light most favorable to him, showed the following facts:

Bernice B. Fraser resided in her Carmel home alone for some years prior to her death. She suffered from a cancerous condition known as carcinomatosis which finally resulted in her death. The testatrix operated a weaving business in Carmel and maintained bank accounts with the Carmel Bank for more than 22 years. Her nearest relative was her brother, Samuel R. Bemis, who lived in San Francisco. Mrs. Coombs, the principal beneficiary of the will and proponent herein, is a graduate nurse and was a close friend of the testatrix for the 15 years prior to the latter's death. She visited Mrs. Fraser frequently but never actually nursed her.

At the time she executed her will Mrs. Fraser was staying in Pacific Grove at the home of Mrs. Coombs for a 10-day period. On January 3, 1944, the testatrix telephoned to Mr. Foster, an attorney, and asked him to come to the house for the purpose of redrafting her will. When the attorney arrived that afternoon Mrs. Fraser met him at the door and conducted him into the living room for a conference at which no other person was present. The testatrix discussed each paragraph of the will and instructed the attorney to draft the instrument so that the bulk of her estate would go to Mrs. Coombs. She stated to Mr. Foster that she wanted to leave only $250 to her brother because she was not on friendly terms with him. According to the attorney, Mrs. Fraser was "very familiar with legal terminology and provisions of wills and very definitely understood just what she wanted." The next day the will was executed in the dining room of Mrs.

Coombs' home. It was witnessed by two women whom the testatrix had selected and instructed her attorney to contact. The record shows that at the hearing prior to the admission of the will to probate Mrs. Coombs testified, in answer to a routine question by the court, that she was present in the room at the time the will was signed. In the instant action, however, the proponent testified that she went into another room while the will was being executed, and this testimony was corroborated by the attorney and both witnesses to the instrument. All persons present when the will was executed testified that after signing her name the testatrix struck the table with her hand and stated: ''This is the way I want it and this is the way it shall be.'' Mrs. Fraser's doctor, her attorney, the vice-president of the bank and both testamentary witnesses testified that she was of sound mind, mentally alert, extremely intelligent and possessed of a strong will power at all times up to the day of her death.

It is well settled that if the plaintiff presents any substantial evidence to support his case it is the duty of the trial court to deny a motion for nonsuit. (*Kirk* v. *Los Angeles Ry. Corp.*, 26 Cal.2d 833, 837 [161 P.2d 673], quoting 9 Cal. Jur. 558, 559.) However, when the evidence viewed in the light most favorable to the plaintiff is legally insufficient to support a judgment in his favor the motion should be granted. (*Nicholas* v. *Jacobson*, 113 Cal.App.382, 389 [298 P. 505]; *Zito* v. *Weitz*, 62 Cal.App.2d 161, 164 [144 P.2d 409]; 9 Cal. Jur. 557. There is no doubt that the present case falls within the latter category.

Appellant's contention that the will is unnatural is not supported by the evidence or by law. Samuel Bemis lived in San Francisco and saw his sister so infrequently that even the closest friends of the decedent did not know that she had a brother. The testatrix stated to her attorney that she was not on friendly terms with her brother and wanted to leave him a small amount of money ''so he can't cause any trouble.'' Under the law Bemis was a collateral relative (Prob. Code, § 253) which relationship would not in itself cause him to be the natural or normal object of the testatrix' bounty. (*Estate of McGivern*, 74 Cal.App.2d 150, 154 [168 P.2d 232]; *Estate of Nolan*, 25 Cal.App.2d 738, 742 [78 P.2d 456]; *Estate of Easton*, 140 Cal.App. 367, 377 [35 P.2d 614].) In view of the fact that respondent had been Mrs. Fraser's closest friend for many years the will cannot be said to be unnatural.

 It is claimed that a confidential relationship existed between respondent and testatrix which together with the latter's condition resulting from her illness afforded Mrs. Coombs the opportunity to control the testamentary act. The evidence presented to the trial court did not support this contention. It was shown without contradiction that the relationship of nurse and patient never existed between the parties, that the testatrix' instructions to her attorney for the preparation of the will were given at a private conference, and that the witnesses were selected by Mrs. Fraser and contacted initially by her attorney, although respondent may have telephoned to them at a later time. The testatrix was sitting at the dining room table when she signed the will and everyone present testified in this action that the respondent was not in the room at that time. It was also established that Mrs. Fraser's illness was not painful and that mentally she was exceptionally clear and active. In view of this state of the evidence the rules set forth in *Estate of Shields,* 49 Cal. App.2d 293 [121 P.2d 795], are controlling. In that case this court quoting from *In re McDevitt,* 95 Cal. 17 [30 P. 101], and *Estate of Arnold,* 16 Cal.2d 573 [107 P.2d 25], said (p. 300):

" 'Evidence must be produced that pressure was brought to bear directly upon the testamentary act; but this evidence itself need not be direct. Circumstantial evidence is sufficient. It must, however, do more than raise a suspicion. It must amount to proof, and such evidence has the force of proof only when circumstances are proven which are inconsistent with the claim that the will was the spontaneous act of the alleged testator.' (*In re McDevitt,* 95 Cal. 17, 33 [30 P. 101]; *Estate of Leahy,* 5 Cal.2d 301, 304 [54 P.2d 704].)

" 'In an action to set aside a will of a deceased person on the ground of undue influence, it is necessary to show that the influence was such as, in effect, to destroy the testator's free agency and substitute for his own another person's will. (*Estate of Motz,* 136 Cal. 558, 583 [69 P. 294].) Evidence must be produced that pressure was brought to bear directly upon the testamentary act. (*In re McDevitt,* 95 Cal. 17, 33 [30 P. 101].) Mere general influence, however strong and controlling, not brought to bear upon the testamentary act, is not enough; it must be influence used directly to procure the will, and must amount to *coercion* destroying free agency on the part of the testator. (*Estate of Keegan,* 139

Cal. 123, 127 [72 P. 828].) It is further held that mere opportunity to influence the mind of the testator, even coupled with an interest or motive to do so, is not sufficient. (*Estate of Easton,* 140 Cal.App. 367, 371 [35 P.2d 614].)' "

In the Shields case the contestants argued, as does appellant herein, that a confidential relationship was shown to exist which shifted the burden to the proponents of the will to show a lack of undue influence. In answer to that contention this court stated (p. 300): "We do not agree that such a confidential relationship was shown but conceding that it was this did not, standing alone, shift the burden to the proponents." We then quoted from *Estate of Arnold (supra)* as follows:

" 'In the *Estate of Baird,* 176 Cal. 381, 384 [168 P. 561], we find the applicable rule stated in the following concise language: "As suggested in *The Estate of Higgins,* 156 Cal. [257] 261 [104 P. [6] 8], 'presumption of undue influence' arises from proof of the . . . [existence] of a confidential relation between the testator and such beneficiary, *'coupled with activity on the part of the latter in the preparation of the will.'* The confidential relation alone is not sufficient. There must be activity on the part of the beneficiary in the matter of the preparation of the will." ' "

The final rule set down in the *Estate of Shields, supra,* also controls the instant appeal. In that case this court held (p. 301):

"The fact that the will was prepared from directions given by the testator to his attorney when no one else was present is very strong evidence that it was the testator's voluntary act. (*Estate of Unger,* 188 Cal. 714 [206 P. 1003] ; 26 Cal.Jur. 728.)"

Appellant concedes that if the judgment of nonsuit is affirmed herein the appeal from the order denying his motion to set aside the decree of final distribution becomes moot. The question, therefore, is not reviewable on appeal. 2 California Jurisprudence 803 and authorities there cited.

The judgment is affirmed and the appeal from the order is dismissed.

Goodell, J., and Dooling, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 22, 1946.